People of the State of Illinois, Plaintiff-Appellee, v. Bobby Bright, Defendant-Appellant.

Gen. No. 50,575.

First District, Second Division.

November 1, 1966.

Archie B. Weston, Sr. and George C. Adams, of Chicago (George C. Adams, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction for the crime of aggravated battery, after a verdict by a jury, with sentence in the Illinois State Penitentiary for a period of 15 to 20 years.

Albert Berg, called as a State witness, testified that on November 29, 1962, he went to a tavern located at 2506 North Lincoln Avenue, which is often called "the Club"; that at about 12:35 a. m. he saw defendant in the tavern but had no conversation with him; that defendant left the tavern; that shortly thereafter, as he stepped out of the tavern, defendant started to fire and he was shot through the stomach twice and in the hip once; that he fell to the sidewalk and defendant kept firing while he was lying on the sidewalk; and that he did not have any weapons on that particular occasion and never carries a gun. Witness Berg was then asked if he ever carried a gun, knife, any broken bottles or anything like that and he replied "no" to all of these questions. He then identified defendant as the man who shot him.

On cross-examination, complaining witness Berg testified that when he got to the tavern it was about 11:00 p. m.; that defendant was sitting at the east end of the bar; that he had come from a friend's house, where he had one bottle of beer during the course of the visit; that he had been in the tavern before; that he knew many people in the neighborhood that went to the tavern; that he saw defendant sitting with a lady friend; that he was about 15 to 20 feet from the spot where defendant and his lady friend were sitting; that he did not have any conversation with defendant, but talked generally to the crowd; that defendant did not address him; that there was no argument in the tavern; that Bright left alone; that he left shortly thereafter, walked out the door and

5

was shot; and that defendant was standing facing him as he came out of the door.

John Babbs was called as a witness for the State and he testified that he was a part-time bartender at "the Club"; that he had known defendant about two months; that defendant arrived about 9:30 p. m. and complaining witness Berg arrived about an hour and a half later; that Bright left the tavern about 12:30 a. m.; that a short time later Berg left the premises; that he heard a shot outside the door; that he opened the door and defendant was standing to the right of the door with a pistol in his hand and he fired three more shots into complaining witness Berg, "who was laying across in front of the door"; that after the third shot was fired into Berg, he heard a clicking noise; and that after the shooting, the defendant went down the side of the tavern to the back door and got his topcoat and left.

On cross-examination Babbs testified that defendant had several drinks while sitting at the bar; that he did not put his feet on the bar; that there was an argument between defendant and Berg; that when defendant went out the door he stated "don't follow me"; that he did not see defendant fire the first shot; and that he did not see Berg fall.

Barbara Hutson, a witness for the State, testified that she was in "the Club" at about 12:30 a. m. when the commotion started; that she saw flashes at the front door; that she saw Berg lying on the ground outside in front of the door; that she went over to him and knelt down and he was trying to get up; and that she held him and told him not to move. On cross-examination, she testified that she did not know defendant or Berg.

The court adjourned and met the following day. Upon recovening, defendant stated that his counsel was being fired by him and made an eloquent statement to the court in which he pointed out alleged errors that had occurred during the course of the trial. The court ordered the trial

to continue with representation by the same attorney. Defendant then stated that he wished to conduct the trial by himself with assistance by his defense counsel. The court did not allow defendant's request.

Patrick Tuohy was called as a witness and testified that he is a detective with the Chicago Police Department; that on October 29, 1962, at about 12:40 a. m. he went to a tavern at 2506 North Lincoln Avenue, in response to a radio call that a man had been shot; that he went to the Del-Ray Hotel looking for defendant; that he received word on November 4, 1964, from Scotts Bluff, Nebraska, that they had Bright; and that he proceeded to Scotts Bluff and brought defendant back to Illinois. He identified defendant in court. On cross-examination, he stated that defendant waived extradition and that defendant was given safe conduct to Chicago.

Jessie Lawson, a witness for the State, testified that defendant and Berg did have an argument at the bar; that defendant and Berg left "the Club" together; that he heard something that sounded like gunshots; that he called the police; and that he then went outside the door and saw Berg lying on the sidewalk. On cross-examination, he testified that Berg was talking loud while sitting at the bar.

Orlino Hosaka testified for the State that he is a licensed physician in the state of Illinois; that he received a patient by the name of Albert Berg; that said patient had gunshot wounds in the stomach and left thigh. On cross-examination, he testified that there were five bullet holes; that two of the bullet holes apparently being the result of a bullet passing through the body. The State rested and defendant requested a directed verdict, which was denied.

Defendant took the stand in his own behalf and testified that he arrived at the tavern about 8:30 p. m.; that he bought several drinks; that Berg was sitting several stools away from him; that he bought Berg several

7

drinks; that he got up to go to the jukebox to play the music and when he came back he saw his money, which was on the bar, was "growing a little smaller"; that Berg tried to make conversation with him; that Berg made several personal remarks to him; that he put his feet up on the bar; that he asked Berg to refrain from doing this; that Berg got off the stool and got smart; that he took his drink and splashed it across Berg's foreleg; that Berg stepped off the stool and called him names; that Berg grabbed him and pulled on the left shoulder pad of his suit; that he struck Berg on the chin, knocking Berg onto the floor; that Berg challenged him to a fight; that he told Berg he didn't want to fight; that the two of them went outside; that he turned around and was shot in the left leg; that Berg had a gun in his hand; that he pulled out his own pistol and shot at Berg; that he left the scene; that he didn't go back to the hotel where he was staying; that he subsequently heard there was a "shoot to kill" order on him by the police; and that he was arrested by the F. B. I. in Scotts Bluff, Nebraska. On cross-examination, he testified that he had called Superintendent Wilson of the Chicago Police Department, to guarantee his safe arrival; that he had occasion to carry pistols while he was employed as a guard over large sums of money; and that he was a former police officer.

A verdict was returned against defendant and judgment entered on said verdict. Defendant appeals from that judgment.

Defendant contends:

 (1) that there was a fatal variance between the indictment and the evidence,

 (2) that he was represented by incompetent counsel,

 (3) that defendant's counsel did not request the State to elect which of the indictments the State was to proceed on,

(4) that the statute requiring trial within 120 days of incarceration was violated,

(5) that the uncontradicted statement that he acted in self-defense after he was shot by complaining witness, entitled defendant to a directed verdict,

(6) that error was committed by the trial court in allowing the State's Attorney to ask complaining witness, Berg, if he attacked defendant with a gun, knife, broken bottle or any other weapon, in that said question had drawn inferences of a prejudicial nature,

(7) that the court erred in not granting defendant's request to discharge his attorney,

(8) that defendant was not proven guilty beyond a reasonable doubt.

■ We disagree with defendant's first contention. It was uncontested that the occurrence took place on November 29, 1962. The indictment against defendant charged that the offense of aggravated battery was committed on November 29, 1962, in violation of chapter 38, section 12–4 of the Illinois Revised Statutes of 1963. Proof of the precise date as alleged is unnecessary unless the allegation of a special time is an essential ingredient. People v. Taylor, 391 Ill 11, 62 NE2d 683 (1945). The fact that the indictment charged violation of the 1963 statutes instead of the 1961 statutes, does not change the general rule. An indictment is sufficient if it informs an accused of the charge. People v. Pronger, 48 Ill App2d 477, 481, 199 NE2d 239 (1964). Defendant was aware of the charges placed against him and was able to prepare a defense.

■ We disagree with defendant's second contention that he was represented by incompetent counsel. It was argued by defendant that his attorney failed to ascertain whether or not he had witnesses. It was apparent from

reading the record that counsel had represented defendant and because the defense did not subpoena witnesses does not in itself indicate that defense counsel was remiss. People v. Olmstead, 32 Ill2d 306, 205 NE2d 625 (1965). Furthermore, there is no showing that there were any witnesses who could have testified favorably for the defendant. Defendant could not recall the name of the woman he was sitting with on the night of the occurrence. This precluded his attorney from calling her as a witness.

 Defendant also argues that his attorney should have objected to that portion of the prosecutor's opening argument with reference to his arrest at Scotts Bluff, Nebraska. We see no merit in defendant's argument. The testimony of an officer regarding details of an arrest was competent evidence. People v. Durkin, 330 Ill 394, 406, 161 NE 739 (1928).

██ Defendant further argues that his attorney was unprepared to handle a defense because of the brief opening statement made and presented to the jury. This argument likewise does not have merit. The failure to make an opening statement does not indicate inadequate representation, People v. Olmstead, supra.

██ Defendant next argues that his attorney asked damaging questions on cross-examination. An examination of the record does not indicate any incompetency on the part of defendant's counsel.

██ Finally, defendant's argument that the failure of defense counsel to file a motion to exclude the witnesses was not an indication of incompetence and is without merit. Furthermore, defendant was not prejudiced by the failure to exclude the witnesses.

Defendant's third contention, that his attorney did not request the State to elect which of the indictments the State was to proceed on, is without merit in that defendant knew what the charges were against him and that defense counsel was prepared to defend his client against said charges.

10

Defendant's fourth contention, that the statute, requiring trial within 120 days of incarceration, was violated, is completely erroneous in that defendant by agreeing to a continuance tolled the statute requiring trial within 120 days of incarceration.

Defendant's fifth contention that the uncontradicted statement that he acted in self-defense after he was shot by complaining witness, entitled him to a directed verdict, is likewise without merit. Defendant's testimony that he was shot by Berg was contradicted by the State's witnesses and was rejected by the jury.

We disagree with defendant's sixth contention that error was committed by the trial court in allowing the State's Attorney to ask complaining witness Berg, if he attacked defendant with a gun, knife, broken bottle or any other weapon. Defendant argues that said question drew an inference of a prejudicial nature. The questions propounded by the State's Attorney during direct examination of complaining witness Berg, were proper and did not unduly prejudice defendant. The purpose of the State in asking these questions was to show that defendant shot Berg and thereby used force likely to cause death or great bodily harm, when he could have reasonably believed that it was necessary to prevent imminent death or great bodily harm to himself, since Berg was not in possession of dangerous weapons at the time of the shooting. The prosecutor sought to show malice by bringing to the attention of the jury that fact that Berg did not have any weapons. Since no guns or knives were found on Berg, the prosecutor anticipated a claim of self-defense based on the assertion that Berg attacked defendant with some other weapon.

Defendant's seventh contention that the court erred in not granting his request to discharge his attorney is also without merit. Defendant cannot complain that he was denied the right to defend himself since he did not object to the appointment of the public defender and accepted

11

his service throughout the earlier stages of the trial. In People v. Ephraim, 411 Ill 118, 103 NE2d 363 (1952) the public defender was appointed to represent the defendant. Later upon order of the court, the public defender withdrew and the defendant was given leave to defend himself. The case was assigned to another judge, who on his own motion, appointed an attorney to represent the defendant. The case proceeded to trial and defendant was convicted. On appeal he claimed that he was denied the right to defend himself. The court denied this claim and affirmed, saying at page 122:

> ". . . An accused has either the right to have counsel act for him or the right to act himself. . . . a defendant must be required to make his election between the two rights at the proper time and in the proper manner. The only conclusion which obtains from the record before us is that the defendant waived his right to defend himself by not objecting to the appointment of counsel and by accepting his services completely."

and further stated at page 123:

> ". . . We hold that the defendant was not prevented from defending in person and that the record shows that he waived that right by his acquiescence in, and failure to object to, the appointment of Attorney Bellows."

It has been held that the right of a criminal defendant to represent himself also derives from the Federal Constitution, and that the right of a defendant in a criminal case to act as his own lawyer is unqualified, if invoked prior to the start of the trial (United States v. Denno, 348 F2d 12, 15 (2nd Cir, 1965)). Once the trial begins, however, a defendant no longer has an unqualified right to discharge his attorney and represent him-

self. United States v. Fay, 348 F2d 705, 707 (2nd Cir, 1965) ; United States v. Bentvena, 319 F2d 916, 938 (2nd Cir, 1963), cert den 375 US 940; United States v. Mc-Mann, 263 F2d 940, in which the court stated at page 943:

> ". . . The right to discharge counsel after the trial has begun is a qualified one and to support a reversal of a conviction because the trial judge denied a motion to discharge counsel there must be a showing that defendant was prejudiced by the denial."

The record speaks for itself. A reading of the transcript of defendant's testimony reveals that Bright was not qualified to undertake his own defense and that he was not prejudiced by the court's refusal to discharge his attorney.

There was no abuse of the court's discretion by denying the motion since it was clear from Bright's impromptu speech that had he been permitted to undertake the trial of the case at that point, the proceedings would have become confused and confounded. In light of the overwhelming evidence against defendant, he was properly and competently represented by counsel.

■ We feel defendant's eighth contention, that he was not proven guilty beyond a reasonable doubt, is also without merit, because it is a function of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony and a reviewing court should not substitute its judgment for that of the trier of fact. People v. Scott, 34 Ill2d 41, 45, 213 NE2d 521 (1966). The judgment is affirmed.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.