(Nos. 38195, 39047 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIAM ALLEN, Appellant.

*Opinion filed March 29, 1967.—Rehearing denied May 16, 1967.*

WARD, J., took no part.

H. REED HARRIS, of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and MORTON E. FRIEDMAN, Assistant State's Attorneys, of counsel,) for the People.

PER CURIAM: Although this cause is a consolidation of defendant William Allen's writ of error from a jury conviction for robbery, and his appeal from the dismissal of his post-conviction petition in regard thereto, he argues solely the appeal from the judgment of conviction. Since both are founded upon substantially the same claims of error and contentions, we believe justice will be served by considering the matter as argued.

It is uncontroverted that on August 12, 1956, at about 3:00 A.M., defendant entered a tavern and after ordering a drink took $200 from the bartender at the point of a pistol. Later that day he was arrested and identified by the bartender and, conversely, he identified the bartender as the man he had robbed.

In a 1956 pretrial sanity hearing, defendant was found incompetent to stand trial. Approximately a year later, on October 19, 1957, in a second competency hearing, the defendant, represented by the public defender, was declared sane and competent to stand trial. Thereafter, defendant expressed dissatisfaction with the public defender and informed the court that he had an attorney of his own choice. However, when no attorney appeared in his behalf and upon his statement to the court that he did not wish to represent himself, he was offered the choice of the public defender or an attorney from the bar association defense committee. He refused both and requested one from a list of attorneys he presented. The court refused this request and indicated it would appoint a lawyer from the bar association, whereupon defendant requested that he be allowed to represent himself. The court granted this request and in addition thereto appointed the bar association attorney to assist and advise in order "to protect the record."

In his attempted *voir dire* examination of the jurors, defendant indicated a lack of knowledge of the law and procedure involved and by his improper and inadequate conduct it became apparent that the judicial process was deteriorating. Upon the court's suggestion that counsel take over the examination, defendant became boisterous, unruly and persisted in proceeding personally, refusing to remain quiet. At one point he tore up the attorney's file and threw the papers to the floor. When the court failed in its efforts to have the trial proceed with dignity and decorum, it ordered defendant removed from the courtroom and directed the attorney to proceed in defendant's behalf. After

the jury was selected, defendant was allowed to return and participate in his trial but before the examination of State's witnesses he resumed his unruly and derogatory conduct, refusing to abide by the court's directions. He was again excluded and not allowed in the courtroom during the presentation of the State's case except when brought in, under guard, to be viewed by the State's witnesses.

Defendant was permitted in the courtroom, shackled, during the presentation of his defense but was not allowed to conduct his own defense. The record before us indicates that the trial court made every effort to control him, and that the shackling appeared to be a necessary measure to accomplish this end.

The only evidence in defense consisted of the testimony of defendant's sister and brother and of the defendant himself reciting his specific acts of misconduct and unusual past behavior, and further testimony that he was confined to a mental institution in 1953.

On rebuttal, Dr. William Haines, Director of the Criminal Court Behavior Clinic, testified that he had examined Allen on several occasions from September 11, 1956, to September 7, 1957, and that in his opinion defendant was legally sane on each occasion.

The jury was instructed on the question of guilt, non-guilt and insanity and was given three forms of verdicts: guilty, not guilty, and insane at the time of the commission of the crime. The jury returned a verdict finding Allen guilty of the crime as charged.

On appeal, defendant claims "he was deprived of his right to be present at his own trial, denied the right to confront the witnesses against him, and deprived of his liberty without due process of law." Additionally, he contends that "he was insane at the time of the commission of the robbery and/or at the time of the trial. If he was sane at the time of his trial he had the right to conduct his own defense, which right was denied."

The law is clear that an accused has the right to appear and defend in person as well as by counsel; that he has a right to confront the witnesses against him, and that he is entitled to be present and to participate at every stage of the trial. Where the accused is not present in person, the error is not cured by the presence of counsel, as his attorney has no power to waive his right to be present. (*People* v. *Smith*, 6 Ill.2d 414, 416.) It is also well established that these constitutional privileges were conferred for the benefit and protection of the accused but, like many other rights, they may be waived by him. In *People* v. *De Simone*, 9 Ill.2d 522, 533, we held that the court did not exceed its legitimate powers when it proceeded while the accused voluntarily absented himself from the trial and that "The same result must follow under the circumstances attending this defendant's involuntary absence. It is obvious from the record that defendant's removal was necessary to prevent such misconduct as would obstruct the work of the court; such misconduct was, in turn, effective as a waiver of the defendant's right to be present. The right to appear and defend is not given to a defendant to prevent his trial either by .voluntary absence, or by wrongfully obstructing its progress."

We have said on occasion that the reasonable limits to which a judicial opinion must be confined may not permit a complete or detailed analysis of each and every act of the defendant which may have resulted in the trial court's action. This applies in the instant case. The record is replete with rude, boisterous and disrespectful conduct of the defendant toward the court and its orders. The trial judge was both patient and tolerant, and his exclusion of the defendant was justified. It was only when he became unruly that the court instructed the lawyer to conduct the defendant's *voir dire* examination. It is sufficient to say that the record reflects defendant's awareness of his right to conduct his own defense and his deliberate attempt to use this right

to obstruct the trial. By such conduct, he waived any constitutional rights to be present, confront the witnesses against him and conduct his own case at the times he was excluded from the courtroom. Therefore, we find that the court did not err in excluding the defendant and delegating the attorney to represent his interest in his absence.

We further find that the court's designation of an attorney to assist and advise defendant at all stages of the trial was within its discretion and did not infringe upon his right to defend himself. For, as held in *People* v. *Burson,* 11 Ill.2d 360, 373, the defendant's right to defend himself is subject to the constant duty of the court to protect the judicial process from deterioration occasioned by improper and inadequate conduct of the defense. In such situation the court possesses broad discretion in relation to the appointment of counsel for advisory or other limited purposes or to supersede the defendant in the conduct of the defense. Continuous supervision of the trial is required in order to maintain proper judicial decorum to the end that defendant may receive a fair trial.

We turn now to a consideration of defendant's contention that "he was insane at the time of the commission of the robbery and/or at the time of trial."

There is no basis in the record to support defendant's contention with respect to his sanity at the time of trial. Defendant was given a proper pretrial sanity hearing and the jury found him competent. Defendant did not at that time question the jury's finding and he does not now advance any reasons why that finding should be overturned.

With respect to the question of defendant's sanity at the time of the commission of the offense, the record discloses that the witnesses for the defense gave no opinion as to his sanity at any time but merely testified to his specific acts of misconduct and unusual past behavior. Although the further fact was established that defendant was confined to a mental institution in 1953, no reason for such confine-

ment was given. The only expert witness to testify, Dr. Haines, who examined the defendant shortly after the commission of the crime and on other subsequent occasions, stated that, in his opinion, the defendant was legally sane at the time of each examination.

The question of the defendant's sanity at the time of the commission of the offense was a matter for the jury. (*People* v. *Le May,* 35 Ill. 208.) We find that the jury was properly instructed on this question; therefore, its verdict of guilty was a determination that defendant was sane at the time of the commission of the offense.

Finding no error was committed in the trial of this cause, the judgments of the circuit court of Cook County are hereby affirmed.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.