**People of the State of Illinois, Appellee, v. John T. Martin (Impleaded), Appellant.**

**Gen. No. 50,627.**

First District, Third Division.

May 25, 1967.

Gerald W. Getty, Public Defender of Cook County, of
Chicago (Brian Crowe, James J. Doherty and Frederick

F. Cohn, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Ronald Sandler and Thomas M. Burnham, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, John Martin, was indicted for the crime of unlawful possession of narcotic drugs. Appearing pro se, he was tried by a jury, found guilty, and was sentenced to serve a term of two to three years in the penitentiary.

Although several contentions are made in behalf of the defendant in this appeal the principal one, and the only meritorious one in our opinion, is that he was prevented from adequately preparing and presenting his defense because the trial court would not permit him to communicate with anyone during his trial.

The defendant and Perry Williams were riding in a car driven by the defendant and were stopped for running a red light in the City of Chicago. One of the arresting officers observed Williams throw a cigarette package out of the car window. This package was retrieved and the officers noticed that it contained hand-rolled cigarettes composed of crushed green leaves. The occupants were questioned about the package, but both denied knowledge of it. The car was then searched and green leaves, later identified as marijuana, were found in the car. The defendant testified that the car was searched three times before the leaves were found and that the officers did not have permission to search the car.

At his arraignment the public defender was appointed to represent the defendant. After the arraignment the

defendant told the court that he did not wish to be represented by the public defender and requested another attorney. His request was granted. A motion to suppress was made by his new counsel and, after a hearing, was denied. The defendant then moved that he be allowed to appear pro se during the rest of the trial. This motion was allowed and the attorney was granted leave to withdraw from the case.

The defendant participated in the examination of prospective jurors and exercised his challenges. In the midst of the examination, but out of the presence of the jurors, the prosecutor protested that an attorney was sitting in the courtroom with the defendant's mother. He argued that it was only fair that, if the attorney intended to aid the defendant, he should file an appearance and take his place at the counsel table. In reply to this suggestion the defendant stated: "Well, I am not getting assistance from anyone." The prosecutor insisted that if the attorney intended to help the defendant he should be required to file an appearance. The trial judge stated that he saw no reason why the attorney should not be allowed to remain in the courtroom unless there was some involvement between the attorney and the defendant, but that he would not permit the defendant to talk to anyone after the trial commenced.

After the testimony was concluded, the jury was excused and the trial judge informed the defendant that it would be possible for him to submit instructions. The defendant replied that he desired to submit his instructions orally and he spoke specifically about an oral instruction on possession—but he said that he did not know the law on the subject. He was informed by the court that oral instructions were not acceptable and the defendant responded that he had no written instructions. He then asked the court whether he could speak to his mother. The court, who had given the assistant State's attorney a half hour to select his instructions, replied:

"No, you may not. You may not talk to her. I let you talk to her before, but she has been talking to a lawyer." The court explained that his mother had the right to speak to anybody but that he did not; that he could not talk to her or the lawyer because the State objected. The defendant turned to the prosecutor and inquired, "Do you still object?" The prosecutor replied that he did. The court repeated: "I can't let you talk to him now because the State is objecting to it."

The prosecutor's objection was absurd. While the record does not precisely spell it out, it would appear that the prosecutor was concerned with the possibility that the jury might have some sympathy for the defendant due to the fact that he was trying his own case; if the defendant was receiving aid from any source, the prosecutor wanted this fact communicated to the jury. If this was his reason, it was irrational. Even the most skilled attorneys consult with other attorneys while a trial is in progress. They value their ideas on matters of law, their impressions of the jury, their reaction to testimony, their viewpoint on trial strategy. The prosecutor, however, was seemingly determined that the defendant would receive no aid from any source; that if the jury sympathized with him because he had no lawyer—then he was going to be without the assistance of counsel in any shape or form.

 Unfortunately, the trial court concurred with the prosecutor. And, although the court was fair, patient and considerate in every other aspect of the case, his prohibition was absolute: the defendant was not permitted to communicate with anyone. Under this prohibition he could not have talked with a witness before putting him on the stand; for that matter he could not have asked the court clerk to subpoena a witness in his behalf. He was not even allowed to talk to his mother for fear that some helpful suggestion might be passed along to him. There was no corresponding restriction placed upon the prose-

cutor. He was free to communicate with others and it would be surprising if he did not do so. The court's ruling was overly restrictive and could have denied the defendant the opportunity of effectively defending himself. Contrast People v. Hubbard, 77 Ill App2d 14, 222 NE2d 145 (1966), where the defendant first objected to the public defender and then to another court-appointed attorney. The trial court ruled that under these circumstances the defendant would have to represent himself but the court requested one of the attorneys to sit in the courtroom to advise the defendant, saying, "If he chooses to accept your advice or reject it, it is up to him."

 In a criminal proceeding an accused has the right to the assistance of counsel (Illinois Const, art II, § 9) and this right of representation extends to every stage of the trial. People v. Taylor, 32 Ill2d 165, 204 NE2d 734 (1965). But this right may be waived. People v. Ephraim, 411 Ill 118, 103 NE2d 363 (1952). A competent defendant has the right to conduct his own defense if he so chooses. People v. Richardson, 17 Ill2d 253, 161 NE2d 268 (1959); People v. Burson, 11 Ill2d 360, 143 NE2d 239 (1957). If he chooses to defend himself, it must appear that his decision to do so was made understandingly and intelligently after being advised of his right to counsel. People v. Bush, 32 Ill2d 484, 207 NE2d 446 (1965); People v. Williams, 399 Ill 452, 78 NE2d 512 (1948).

There is no indication in the record that the defendant's waiver of counsel was not undertaken with a complete understanding of the consequences, for he had been apprised of his right to counsel and had exhibited a full awareness of this right by requesting that a member of the Chicago Bar Association, other than the public defender, be appointed to represent him. However, there also is no indication in the record that when he decided to act as his own attorney he voluntarily subjected himself to an imposed state of isolation. He did not know-

ingly or willingly relinquish his right to obtain advice from, or to communicate with, others—lawyers or laymen.

No case similar to the one at bar has been brought to our attention by either side and further research has proved unfruitful. There are cases which hold that a trial court's refusal to allow a defendant to consult with anyone (more particularly, his attorney) at the end of a court session and while still subject to cross-examination, is reversible error. United States v. Venuto, 182 F2d 519 (3rd Cir 1950); Commonwealth v. Werner, 206 Pa Super 498, 214 A2d 276 (1965); Commonwealth v. Peetros, 206 Pa Super 503, 214 A2d 279 (1965). These decisions, however, were based upon the constitutional right of a defendant to be represented by counsel at all stages of the proceeding and their rationale is not applicable to a situation like the present one where the defendant has waived this right.

 We see no just reason why a defendant representing himself should not be allowed, within reasonable limitations imposed by the trial court, to obtain advice or information. To hold otherwise would be fundamentally unfair. We do not mean to intimate that a defendant who tries his own case must be provided with legal material, allowed to visit a law library, released from custody, or permitted unreasonable or lengthy intermissions during trial in order to obtain information or discuss the merits of his case. It does not follow that the right to defend oneself must be accompanied by a relaxation of the limitations imposed upon attorneys practicing before a court of law. On the other hand, a defendant appearing pro se should not be subject to greater limitations in preparing or presenting his defense (outside of those restrictions which are necessary because of the defendant being held in custody) than those imposed upon attorneys.

It is a matter of discretion resting with the trial court as to what limitations should be required and the exercise of such discretion should not be upset in a court of review unless it appears that it was clearly abused. It is apparent, however, that the prohibition against communication placed upon the defendant in the present case was unreasonable. We do not see how the defendant's conversing with his mother or an attorney, during a recess called for another purpose, would have delayed the trial of the case, interfered with the decorum of the court, or given the defendant an unfair advantage.

In view of our conclusion it is unnecessary to discuss the defendant's other assignments of error. The judgment of the Circuit Court is reversed and the cause remanded for a new trial.

Reversed and remanded.

SULLIVAN, P. J. and SCHWARTZ, J., concur.