Hillsborough,
No. 5589.

STATE

*v.*

WILLIAM B. ENRIGHT, JR.

Argued April 4, 1967.
Decided July 18, 1967.

*George S. Pappagianis, Attorney General,* and *William F. Cann,* Assistant Attorney General ( *Mr. Cann* orally ), for the State.

*Elmer T. Bourque* ( by brief and orally ), for the defendant.

LAMPRON, J. At about 7:00 A.M. on the morning of April 19, 1965, Ernest Bettez and his wife left their residence located on Fieldcrest Road in Manchester, a dead end street containing about six or seven houses. Their home was unoccupied until about 12:05 P.M. when Ernest returned. He immediately discovered that a wall safe located in a walk-in closet had been removed by breaking through the wall and five ten dollar bills in the safe were also gone. Missing also were a green chenille bedspread, a bottle of wine, a Hamilton electric wrist watch, and other articles. A light of glass in the overhead door of a garage under the house, which was found to have been broken, indicated the mode of entry. An attempt to jam the front door had failed.

Around 7 to 7:30 A.M. that same morning, Robert Lemon, who owned a 1962 blue and white Ford automobile with Texas registration plates, with his wife as a passenger, picked up Roger Cote. The three of them proceeded to the business section of Manchester where Lemon parked his car at about 10:00 A.M. near a club on Manchester Street, a block from the county courthouse at which Lemon and his wife had business to attend. About 12 noon when Lemon proceeded to where he had parked his car he found it gone. He reported its absence to the police as well as the fact that there were locked in the car's trunk three of his guns, one of which was a 25-caliber Steyr pistol.

At about 6:30 A.M. that same morning, according to what defendant Enright told police, he left his home in Derry and "bummed the road to Manchester where he was going to look for work." He said he started drinking in Manchester about 7:30 A.M. and was in a club on Manchester Street when Roger Cote came in there about 11:00 A. M.

About 11:30 A.M. that same day, a resident of Fieldcrest Road on which the Bettez house is located had to stop his truck to let a white and light blue "Chevy or a Ford" with Texas plates proceed south on Fieldcrest Road. He saw "two fellows in the car." He observed this same car go up and down Fieldcrest

Road a few times and testified that this car looked "suspicious to me going up and down the street a number of times."

That afternoon about 1:30 P.M. a taxi was called to the Roger Cote residence on Stark Lane in Manchester where the driver picked up Cote and the defendant Enright. He was asked to take them to a sand pit on Front Street. At this site there was a Ford automobile with Texas plates sunk in soft sand to such an extent that its frame was resting on the sand. This area, located about "one quarter of a mile" from the Roger Cote residence, is desolate, untraveled, with hills and gulleys, and where a car cannot be observed from any public road. At the request of Cote and Enright the taxi driver attempted to pull the car out of the sand but was unsuccessful. He then drove both of them to the taxi office in the city, Enright paying the fare.

Around 2:30 P.M. one Breton saw Cote and Enright enter together a club in Manchester where he was present. As a result of a statement made to him by Cote, Breton left the club with Cote "to go to the sand bank . . . to pull out the car which was supposedly to have been Roger Cote's car, or their car, or whatever it was." When they arrived at the same site previously described "the car [Ford with Texas plates] was off the road into some soft sand and it was pretty well stuck." The two of them returned to the club where Breton bought a watch from Cote which was later identified as the Hamilton wrist watch taken from the Bettez residence.

Breton, however, had recognized this car as Lemon's and returned to the site with him later that afternoon. The first thing Lemon did was to look in the car where he observed that the back seat, from which access could be obtained to the trunk, was dismantled. He looked into the trunk and found that his three guns were missing. One of these, the 25-caliber Steyr pistol, was thereafter recovered in defendant Enright's residence in Derry.

There was evidence that during this same evening of April 19, 1965, a taxi driver picked up defendant Enright about 7:00 or 7:30 and took him from one cafe to another located only about two or three streets away. During the ride Enright inquired about the fare from Manchester to Derry and was informed it was $5. Later that same evening the same driver received another call from Enright who paid the fare in advance and was taken to Derry. During this ride Enright asked the driver if he wanted to buy "a small louvre gun" which he showed to him

but which the driver could not identify as the 25-caliber Steyr later recovered in the Enright home.

The Manchester police, who were advised by Lemon of the location of his car previously reported missing, went to the Front Street location where the car was embedded in sand. They found two sets of footprints leading into some wooded area and about 75 feet distant from the car they found the Bettez safe wrapped in the bedspread taken from the home in the break. The safe door was also found there. The police also found in front of the car an empty wine container taken from the Bettez residence.

There was also evidence that in the car itself the police found what appeared to be insulation dust from the safe. Police investigation of tire marks in front of and in the vicinity of the Bettez home indicated that those markings were identical in type and position to the tires of the Lemon blue and white Ford with Texas plates. There was further testimony that oil spots were found at the edge of the Bettez driveway and that the Lemon car showed a considerable amount of oil leaking from it. Lastly there was testimony that a piece of metal found in the Lemon car matched a piece of metal from the Bettez safe.

The defendant Enright does not dispute the fact that a burglary occurred at the Bettez home on April 19, 1965 between 7:00 A.M. and 12:05 P.M. He does not question that the articles enumerated in the indictment were stolen or that there were three guns in the trunk of the Lemon car, one of which was later found in the defendant's residence. He does contend however that it was not proved beyond a reasonable doubt that he was an offender.

We hold that the record warranted the following findings. The burglary at the Bettez home on April 19, 1965 was committed by two men who to get to and from the scene used the blue and white Ford automobile with Texas plates owned by Lemon and taken from its parking place in Manchester between about 10:00 A. M. to 12:00 noon.

Roger Cote who rode to downtown Manchester that morning with Lemon knew where the car was parked. About 11:00 A.M. Cote and Enright were together in a club on Manchester Street, the street on which the Lemon car had been left by its owner. Around 1:30 P.M. Cote and Enright left the Cote residence, about a quarter of a mile from where the Lemon car was stuck in sand, and proceeded there to attempt to disengage it. Cote and Enright were in a club together about 2:30 P.M. While there Cote sold a

watch taken from the Bettez residence. *State* v. *Rumney*, 108 N. H. 40.

Defendant Enright who "bummed" his way from Derry to Manchester that morning to look for work rode back to Derry that evening in a taxi. He paid $5 for this ride after paying for at least two other rides in Manchester on this day and drinking in different clubs. *State* v. *Mihoy*, 98 N. H. 38, 40; *Haas* v. *United States*, 344 F. 2d 56, 63 ( 8th Cir. 1965 ). He had in his possession a gun taken from the trunk of the car which could be found to have been used by the burglars. 12 C.J.S., Burglary, *s*. 49, *pp*. 720, 721.

" It is seldom that burglary can be proved by the direct and positive evidence of witnesses who have knowledge of the actual breaking and entry. The inference of guilt in most instances must necessarily be drawn from other facts. " 13 Am. Jur. 2d, Burglary, *s*. 45, *p*. 349. We hold that on the evidence the jury could find beyond a reasonable doubt defendant Enright was a perpetrator of the burglary at the Bettez residence. Defendant's motions for a directed verdict and to set aside the verdict were properly denied and his exceptions thereto are overruled.

Defendant Enright contends that the admission in evidence of the 25 - caliber Steyr pistol taken from the trunk of the Lemon car, which was turned over to the police by Enright in his home in Derry, was erroneous and prejudicial to his rights. He also maintains that he was prejudiced by the admission of the testimony of the taxi driver, who took defendant from Manchester to Derry the evening of the day of the burglary, pertaining to Enright's offer to sell him a gun en route.

" Any fact which legitimately tends to connect the defendant with the commission of the offense is admissible. " 12 C.J.S., Burglary, *s*. 49, *p*. 720. It was uncontradicted that the Steyr pistol was owned by Lemon and was locked in the trunk of his car on the day of the burglary. There was also evidence from which it could be found beyond a reasonable doubt that Lemon's car was the vehicle used by the burglars to transport the Bettez safe and other articles taken in the burglary. Enright's possession of this gun was therefore an important link in the chain of circumstantial evidence which the State could properly introduce to connect the defendant with the crime charged. *State* v. *Baron*, 106 N. H. 149, 151; 12 C.J.S., Burglary, *s*. 50 c., *p*. 724. Evidence from the taxi driver that the defendant on the day of the burglary was in

possession of a gun which could be found to be this same weapon was also admissible, for the same purpose. The fact that the gun or the testimony of the driver might tend to be prejudicial to the defendant in other respects does not necessarily render the evidence inadmissible. *State* v. *Iacavone*, 85 N. H. 207, 210; *State* v. *Harkeem*, 97 N. H. 508, 510. We cannot say that a finding of undue prejudice was compelled. *State* v. *Canatella*, 96 N. H. 202, 206.

We consider next defendant's contention that he was denied his constitutional right to be represented by counsel. His right to the assistance of counsel in a proceeding such as this is well established. *Gideon* v. *Wainwright*, 372 U. S. 335. See *Petition of Graham*, 106 N. H. 545, 547; 8 N.H.B.J. 107, 108. However it is equally well established that the defendant had a right to conduct his own defense without assistance of counsel. *Adams* v. *United States*, 317 U.S. 269, 279; *State* v. *Huber*, 148 N. W. 2d 137, 142 ( Minn. 1967 ); *People* v. *Bright*, 78 Ill. App. 2d 2, 12. It follows that a defendant may waive his right to representation by counsel if he does so knowingly and intelligently. *Johnson* v. *Zerbst*, 304 U. S. 458, 465; *Carnley* v. *Cochran*, 369 U. S. 506, 515.

Defendant's counsel on appeal properly admitted in his brief that defendant effectively waived his right to counsel at some point. This occurred in a hearing before trial when the defendant, after having been informed of his right to counsel and of the willingness of the Court to appoint one for him, stated to the Court that he was familiar with the rules of procedure and evidence and that he preferred to proceed to trial acting as his own counsel. Such a waiver continues in effect during the whole trial unless the defendant takes affirmative action to reinstate his right to counsel. 23 C.J.S., Criminal Law, *s.* 979( 3 ) and Supp. n. 98.19. See *In re Turrieta*, 54 Cal. 2d 816, 820, 821.

The defendant maintains that he reclaimed his right to counsel before trial. This is based on a colloquy near the end of the hearing in which defendant waived his right to counsel and elected to conduct his own defense. The county attorney suggested to the Court that consideration be given to the appointment of counsel to sit with the defendant as a " legal advisor. " After inquiry into defendant's educational background, the Court asked him " Would you like to have an attorney here to advise you " ? Defendant answered " If the Court would appoint somebody to sit and advise

me, I have no objection. " The Court stated "I will consider it. " No attorney was appointed and no further mention of a "legal advisor" appears in the record. The trial was held with defendant conducting his own defense.

The record as a whole does not compel a finding that defendant did not knowingly and intelligently waive his right to counsel and that this waiver was not effective during the whole trial. *Moore* v. *Michigan*, 355 U. S. 155, 161; *Watts* v. *United States*, 273 F. 2d 10, 12 (9th Cir. 1959). Nor can we say under all the circumstances of this case that the Trial Court's decision not to appoint advisory counsel for the defendant constituted a violation of any constitutional right. *People* v. *Mattson*, 51 Cal. 2d 777, 795-797; 48 Minn. L. Rev. 1, 36 (1963); 49 Minn. L. Rev. 1133, 1151-1153 (1965).

*Exceptions overruled.*

GRIFFITH, J., did not sit; the others concurred.