THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARCELLUS LINDSEY, Defendant-Appellant.

(No. 56292;

First District (2nd Division)—January 16, 1974.

James J. Doherty, Public Defender, of Chicago (Shelvin Singer, Assistant Public Defender, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago (Elmer C. Kissane and James R. Carlson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from a judgment of conviction for murder. Defendant, Marcellus Lindsey, and one Eddie Wells, were charged with the attempted robbery and murder of Jack Montgomery in the City of Chicago on May 16, 1969. Wells, who shot Montgomery and caused his death, agreed to a plea bargain and pled guilty. He was sentenced to serve two to four years. Defendant, who allegedly was an accountable party, refused a plea bargain, insisted on a trial, and was found guilty. He was sentenced to serve 14 to 20 years.[1]

---

[1] The record does not show the offense to which Wells pled guilty. Nor does it show Wells' criminal record compared to defendant's which, at the time of this conviction, consisted of two prior misdemeanors. It appears from the State's evidence that defendant was not the dominant figure in the attemped robbery and murder of Montgomery. In fact, Wells, as a defense witness, testified that it was he who planned the attempt to rob Montgomery; and that the plan was executed by him and a companion whose name was "Bobby," not the defendant. The trial judge, however, disbelieved Wells' testimony.

Urging that his conviction be reversed, defendant presents three issues for our review. (I.) Whether he was adequately admonished by the trial court when he requested and was granted leave to act as his own lawyer with his court-appointed counsel assisting him. (II.) Whether it was an abuse of judicial discretion for the trial judge to prevent defendant from obtaining assistance of counsel during crucial phases of his trial, after the court had ruled that he could represent himself with his court-appointed counsel assisting him. (III.) Whether defendant's in-court identification was the product of highly suggestive procedures conducive to irreparable misidentification.

These issues are raised from events that occurred during defendant's trial. Therefore, except as it may be necessary for our discussion, we will not state the facts from which the offenses arose.

## I.

Defendant was brought to trial the day after Eddie Wells pleaded guilty. His lawyer, at the time, was Mr. Joseph Malek of the Illinois Bar who had been defendant's court-appointed counsel for more than 18 months. In contrast with Eddie Wells, the record shows that defendant was insisting on a trial. When Mr. Malek stated this fact, he was instructed to consult with the defendant, "explain everything to him,". and report to the court. This was done; and a short time later, the case was called. Mr. Malek then told the trial judge that he had expressed his views on the charges pending against defendant and "*  *  *  I indicated to Mr. Lindsey that he has a right to a bench or jury trial, I indicated to him the maximum penalty on each indictment and the. offer that has been made and Mr. Lindsey indicated that he wants to go to trial." In answer to the assistant state's attorney's inquiry, defendant said he wanted a trial by jury. The court accepted defendant's. decision and ordered. that jurors be sent to his courtroom.

After jury selection began, Mr. Malek reported to the trial judge that defendant wanted to represent himself. The trial judge convened the parties in his chambers and undertook to explain to defendant the seriousness of the charges against him and the necessity that he be represented by counsel. Defendant was asked if he understood what was said to him and he said he did. At the end of a long colloquy, defendant told the trial judge, "I suggest that Mr. Malek stay on call and proceed with trial." The trial judge asked him, "Stay on call to assist you?" Defendant answered, "That's right." The trial judge said, "*  *  *  I see nothing wrong with that." He followed this statement with a long inquiry of defendant concerning his age, his education, experience in life, and then ruled "*  *  *  that the desires of the defendant, Marcellus Lindsey,

are to be respected, he has that constitutional right to represent himself, however, I am ordering you, Mr. Malek to assist him." Selection of the jury then continued.

In this appeal, defendant contends that before he was granted leave to represent himself, with Mr. Malek assisting him, he was not given the admonishments required by Supreme Court Rule 401(a).[2] Defendant argues that, although required by the rule, the trial court did not determine whether he understood the nature of the charges (murder and attempt to rob) nor did the court determine whether he understood the minimum and maximum sentences prescribed by law for the offenses for which he was being tried. Defendant insists that the trial judge had the duty to give him the admonitions of Rule 401(a) because he made a waiver of counsel before going to trial.

■■ The purpose of Supreme Court Rule 401(a) is to provide a procedure which will eliminate any doubt that a defendant understands the nature and consequences of the charge against him before a trial court accepts his waiver of the right to counsel; it is a procedure that precludes a defendant from waiving assistance of counsel without full knowledge and understanding. (See *People v. Schrodt*, 8 Ill.App.3d 660, 289 N.E.2d 652; Supreme Court Rule 401(a), Ill. Rev. Stat. 1971, ch. 110A, par. 401(a).) A waiver, as this concept applies to the waiver of the right to counsel, is an intelligent relinquishment or abandonment of a known right or privilege. See *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019; *People v. Brown*, 99 Ill.App.2d 281, 241 N.E.2d 653; *McKenzie v. State* (Fla. App. 1966), 187 S.2d 69.

■■ A waiver of counsel occurs when a defendant, knowing his rights and intelligently exercising them, informs a court that he does not wish counsel; that he wants to stand alone. (*People v. Bowman*, 40 Ill.2d 116, 239 N.E.2d 433.) A finding that the right to counsel has been waived is not to be made lightly. (*People v. Blanchard*, 37 Ill.2d 69, 224 N.E.2d 813.) Such a finding should be preceded by a careful inquiry by the

---

[2] Supreme Court Rule 401(a) (Ill. Rev. Stat. 1971, ch. 110A, par. 401(a)) provides as follows:

"(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of a crime punishable by imprisonment in the penitentiary without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected * * *;

(3) that he has a right to counsel, and, if he is indigent, to have counsel appointed for him by the court."

court, aimed at determining the defendant's ability to conduct his own defense. (See *People v. Morris,* 43 Ill.2d 124, 251 N.E.2d 202.) "The right of a defendant to represent himself, when his choice is intelligently made, is as basic and fundamental as his right to be represented by counsel." (*People v. Sinko,* 21 Ill.2d 23, 25-26, 171 N.E.2d 9.) When the court determines that the defendant can represent himself and that waiver of counsel is knowing and intelligent, counsel of record, if there be one, is relieved and the defendant conducts his own defense. (*United States v. Spencer* (2 Cir. 1971), 439 F.2d 1047; *People v. Bush,* 32 Ill.2d 484, 207 N.E.2d 446.) Where, however, a defendant requests that he be allowed to conduct his own defense with the assistance of a court-appointed lawyer, he does not waive the right to counsel. He seeks, instead, the best of both worlds: freedom to conduct his own defense and benefit from the assistance of counsel. In such a case, it is within the trial court's discretion to decide whether defendant may have an attorney to assist and advise him. *People v. Allen,* 37 Ill.2d 167, 226 N.E.2d 1; compare *People v. Burson,* 11 Ill.2d 360, 143 N.E.2d 239.

In this case, defendant told the trial court that he wanted to conduct his own defense, with his lawyer remaining in the case to assist him. It is true, as defendant contends, that the trial judge did not in open court determine whether he understood the nature of murder and attempted robbery. Nor did the judge in open court determine whether defendant understood the minimum and maximum sentences provided by law for the two offenses. Nonetheless, we are of the opinion that the rule admonitions need not have been given defendant because, by his request that he be allowed to conduct his own defense with his court-appointed lawyer assisting him, he did not make a waiver of counsel within the meaning of Supreme Court Rule 401(a).

## II.

With defendant acting as his own lawyer, and Mr. Malek under orders to assist him, selection of the jury was resumed. But a short time later, defendant expressed the desire to waive his right to a trial by jury. He was admonished by the trial judge concerning his waiver, it was accepted, and the jury panel was dismissed. The case then proceeded as a bench trial with defendant still representing himself and Mr. Malek assisting him.

Thereafter, the State called two witnesses and during their examinations, Mr. Malek made objections on which the trial judge ruled, without comment. However, when at one point Mr. Malek asked that the trial proceed, the trial judge told him, "You are not the attorney in this case." Mr. Malek responded, saying, "I am his co-counsel, Judge." The trial

judge replied, "You're not his co-counsel, you are assisting him. He's his own counsel. He doesn't want to hire you. He has fired you."

A short time after this statement, the State called Ronald Pluta, the Chicago Police Department investigator who, at about 11:30 A.M. on May 16, 1969, had responded to the call sent out when Jack Montgomery was shot. After giving the details of his investigation of the shooting, Pluta testified that "[a]t the original scene of the robbery and shooting, we were also given information relative to a second subject that was in the company of Eddie Wells at the time. This individual was known as 'Honeybear,' a street name used by the subject." In answer to further questions, Pluta testified that he knew the defendant and knew him by the street name "Honeybear."

When Pluta was turned over for cross-examination, defendant said to the trial judge, "Your Honor, I would like to have Mr. Malek cross-examine for me." The trial judge refused to allow Mr. Malek to cross-examine Pluta.

Wycee Williams was one of the State's two occurrence witnesses to the shooting of Jack Montgomery. He was called by the prosecution; and when it was time to cross-examine him, the trial judge asked defendant if he had any questions to ask Williams. Defendant said he did not. Mr. Malek, however, apparently believed that Williams' testimony required cross-examination. He addressed the court, saying, "Excuse me, Judge, as Mr. Lindsey's co-counsel * * *." The trial judge interrupted Mr. Malek, saying to him, "No, you are not co-counsel. You talk to Mr. Lindsey, he can speak for himself. He demanded that he be attorney of record and that he represent himself." After this exchange, and as a result of Mr. Malek's suggestion, Wycee Williams was recalled. Although it was Mr. Malek who wanted to question Williams, he was not allowed to conduct the cross-examination. Instead, the trial judge ordered him to be seated, and directed defendant to cross-examine Williams. When at one point of defendant's attempt at the cross-examination Mr. Malek said "I would like to help, Judge," his request was ignored.

After Williams was dismissed as a witness, Ronald Pluta was recalled by the prosecution. When his direct testimony was completed, defendant said to the trial judge, "Your Honor, before cross-examining the witness, could I have my co-counsel cross-examine?" The trial judge replied, "No, we have passed that. The answer is no." Mr. Malek was not allowed to cross-examine Pluta.

The record shows that defendant called Eddie Wells as his first witness. The trial judge was informed by the prosecuting attorney that Wells was represented by counsel. The judge announced that "Mr. Wells will be admonished properly." At that point, Mr. Malek spoke to the

court, saying "Excuse me. If this is a matter of technicality, may I intervene on behalf of my co-counsel here with respect to Mr. Wells." The trial judge refused to allow Mr. Malek to speak. Wells was then sworn, and, before continuing with the admonishment of Wells, the trial judge asked defendant if he had a statement. Defendant replied, "Your Honor, it is too technical for me to understand what Mr. Malek is saying." When Mr. Malek made another attempt to speak, the trial judge said to him, "No, no, I will not stand for any interruptions. When I am through you can make a statement." Mr. Malek then tried to explain that "Mr. Lindsey cannot comprehend, Judge, what I am trying to tell him." The judge replied, "Mr. Lindsey was admonished at the start of this matter in great detail. Please be seated."

Pointing to these occurrences, defendant contends that he was deprived of assistance of counsel during crucial phases of his case by the trial judge's refusal to let Mr. Malek cross-examine witnesses and make objections. Defendant insists it was an abuse of judicial discretion for the trial judge to tell him he could represent himself with Mr. Malek assisting him and then, for no reason other than his decision to conduct his own defense, prevent Mr. Malek from giving assistance when it was needed.

■■ We begin with the observation that when defendant was granted leave to conduct his own defense, he could have been required to elect between the right to represent himself and the right to the assistance of counsel. (*People v. Ephraim*, 411 Ill. 118, 103 N.E.2d 363.) And it would not have been error, after a proper finding, for the trial court to have refused defendant the opportunity to conduct his defense with the assistance of counsel. (*Lopez v. Pitchess* (C.D. Cal. 1967), 265 F.Supp. 136; see *People v. Bright*, 78 Ill.App.2d 2, 223 N.E.2d 215; Annot., 77 A.L.R.2d 1233, 1241.) It was within its judicial discretion for the court either to have granted or denied defendant's request that Mr. Malek assist him in the conduct of his defense. *People v. Allen*, 37 Ill.2d 167, 226 N.E.2d 1.

Nevertheless, the trial court did not initially restrict or limit the availability of Mr. Malek as counsel assisting the defendant. Therefore, it was to be expected that defendant was free to turn to Mr. Malek with any request for assistance that was reasonable and proper. Of course, this expectation was always subject to the trial court's constant duty to protect the judicial process from deterioration occasioned by improper or inadequate conduct by the defendant. See *People v. Burson*, 11 Ill.2d 360, 373, 143 N.E.2d 239.

■■ A study of the record, however, discloses that none of defendant's requests for assistance from Mr. Malek was improper; none had any

tendency to deteriorate the judicial process; all were courteously and respectfully expressed. In fact, defendant's requests would have expedited the trial. The only reason the trial judge refused to allow Mr. Malek to assist the defense was because defendant had elected to represent himself. In our judgment, this was an abuse of judicial discretion. We are of the opinion that it was prejudicial to tell the defendant he could represent himself, with a court-designated lawyer to assist him, and then, at crucial phases of his trial, when he made reasonable requests for assistance, prevent the lawyer from assisting him. The judgment must be reversed and the cause remanded. *People v. Martin,* 84 Ill.App.2d 117, 228 N.E.2d 557.

## III.

There may be another trial in this case, the same occurrence witnesses for the State may be called, and the question of the allegedly tainted in-court identification may arise again. Therefore, it is necessary that we decide whether the showing of photographs to two witnesses in their direct examination made defendant's in-court identification the product of a highly suggestive procedure that was conducive to irreparable misidentification. *Simmons v. United States* (1968), 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967.

The first of the two witnesses was Samuel Daniels. He testified that on May 16, 1969, he was the manager of a grocery store at 3003 West Polk Street in Chicago; that about 11:00 A.M., Jack Montgomery, a cookie truck driver, came to collect a bill; that while Montgomery was in the store, Wycee Williams, a truck driver for a pickle company, came in to make a delivery; and that Montgomery finished his business and went to his truck. Daniels said that he looked out and saw "two boys" near the truck. One, he recognized as Eddie Wells; the other boy he did not recognize. However, Daniels described the unknown boy as "* * * five-five, maybe a little taller, weighed about one hundred forty pounds. He was a dark-complexioned boy." Daniels said that he looked at both boys for about 12 minutes; he looked at the unknown boy for 6 to 7 seconds.

Shortly after Montgomery reached his truck, Daniels said he heard "a rumble," then a shot; and he saw Eddie Wells running with a gun in his hand. The other boy ran in the same direction. Daniels was then shown a photograph, People's Exhibit 4, and he was asked if he recognized it. He said he did; that it was a photograph which had been shown to him by certain Chicago policemen an hour or so after Montgomery was shot. Daniels was asked if he had ever told a Chicago policeman that the photograph "* * * accurately represents the picture

of the person who was with Eddie Wells when Jack Montgomery was shot * * *." Daniels answered, "Well, that picture favors him." [3] He was then asked to, and he did identify defendant in court as the person who was with Wells on the occasion of the shooting. However, when he was cross-examined by defendant, Daniels said he was not certain of his identification.

The second occurrence witness was Wycee Williams. He testified that he was in Daniels' store on the morning of May 16; that Montgomery, who was there, left and went to his truck; that he saw two boys run from the truck, one with a gun in his hand; that the boy who did not have a gun was wearing a red shirt, was dark skinned, and "had a kind of bushy hair." Williams was shown a photograph, People's Exhibit 6, which he identified as the one he picked out from among ten that Investigator Ronald Pluta showed to him in his home on May 18, 1969. He said that the picture truly and accurately depicted the person he saw running away from the truck on May 16, the one with the red shirt, bushy hair "* * * and dark-complected skin." Williams was asked to, and he did, identify defendant in court as that person.

From the showing of these photographs to Daniels and Williams, defendant contends that these witnesses' in-court identification of him was the product of a highly suggestive procedure. He argues that use of the photographs suggested the identification testimony because the two witnesses were identifying the person they saw in the pictures shown them, not defendant in court.

■■ We do not agree with this contention nor with the argument in its support. Putting to one side the evidentiary value of Daniels' testimony, it was proper to show him a picture of the defendant (assuming it existed) and ask him if he had not previously recognized the person it portrayed. Daniels had testified that he did not recognize the boy who was with Eddie Wells the morning of the shooting. Showing him a valid picture was a proper way to refresh his recollection. (See *Paden v. Rockford Palace Furniture Co.*, 220 Ill.App. 534; Annot., 125 A.L.R. 19.) As to Wycee Williams, showing him the photograph, People's Exhibit 6, was proper. The preliminary questions asked him established an adequate foundation; they revealed he had an independent recollection of the person he said was with Wells on May 16, 1969. Neither the photographs

---

[3] This picture, on its face, shows that it was taken by the Chicago Police Department on June 30, 1969, the day after defendant was arrested. Therefore, in stark impeachment of Daniels, the picture could not have been shown to him "an hour or so after Montgomery was shot" because it was not in existence. This fact, together with Daniels' uncertain and vague identification of the defendant, practically destroys him as a witness whose testimony can sustain the conviction in this case.

shown the two witnesses nor the questions asked them were suggestive in any way. Therefore, the showing of photographs to Daniels and Williams, as part of their direct examination, did not make their in-court identification of defendant the product of a highly suggestive procedure that was conducive to irreparable misidentification. *People v. Hayes,* 52 Ill.2d 170, 287 N.E.2d 465; *People v. Stringer,* 52 Ill.2d 564, 289 N.E.2d 631; *People v. Jackson,* 54 Ill.2d 143, 295 N.E.2d 462.

## IV.

The judgment is reversed and the cause is remanded for a new trial, or for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

HAYES, P. J., and STAMOS, J., concur.