**Leroy ETIER, Petitioner,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Respondent.**

**Civ. A. No. 68–C–1–C.**

United States District Court
W. D. Virginia,
Charlottesville Division.
April 15, 1968.

Overton P. Pollard, Asst. Atty. Gen., Richmond, Va., for respondent.

## Opinion and Judgment

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus by Leroy Etier, a state prisoner, pursuant to the provisions of 28 U.S.C. § 2241 and is filed *in forma pauperis*. The case was ordered transferred to this court from the United States District Court for the Eastern District of Virginia on January 5, 1968.

Respondent is now detaining petitioner pursuant to a judgment of the Corporation Court for the City of Charlottesville, Virginia, rendered on March 29, 1963, wherein petitioner was convicted of forgery and sentenced to ten years in the Virginia State Penitentiary. Petitioner has exhausted his presently available state remedies in compliance with 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), having raised his claims both in the trial court in a plenary habeas hearing and in the state's highest court on appeal.

Petitioner claims that he is entitled to habeas corpus relief on the following grounds:

1. Petitioner contends that he was inadequately represented by counsel.

2. Petitioner contends that he was denied a fair trial because he was incompetent to waive his right to the assistance of counsel and proceed to conduct his own defense.[1]

3. Petitioner contends that he was denied a fair trial because of the improper and prejudicial conduct and actions of the Commonwealth's attorney in the prosecution of the case.

■ Viewing petitioner's first two claims, we note an inconsistency. Petitioner on the one hand claims that he was denied the effective assistance of counsel and on the other claims his waiver of counsel was ineffective. As to the first claim the record reveals that on March 13, 1963, the court appointed counsel to represent petitioner at trial. Counsel then undertook to represent petitioner and held numerous meetings with him. During the course of these interviews considerable friction and conflict arose between petitioner and counsel who is now deceased.[2] Therefore, when the case came up for trial on March 29, petitioner waived the assistance of counsel. Not having availed himself of appointed counsel's services, he cannot claim that counsel's representation was inadequate.[3]

■ The question then arises in regard to petitioner's waiver of his constitutional right to the assistance of counsel. Although courts do not favor waiver of constitutional rights, an accused may waive his constitutional right to counsel and proceed to conduct his own defense. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). But the waiver must be "intelligent and competent" and the trial court has the duty of determining this: "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused— whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining

---

1. This claim is viewed in the light most favorable to petitioner.

2. Petitioner testified at length concerning the cause of their conflict. However, only the portion of his testimony concerning what his counsel said to petitioner about his attitude was corroborated. The evidence at best tends to indicate that the conflict arose mainly as a result of petitioner's general uncooperative and imperious attitude wherein petitioner sought

to control the case himself. Petitioner's testimony that he unsuccessfully sought to discharge his court-appointed attorney and obtain new counsel after their conflict is unsupported anywhere in the record.

3. Although petitioner waived his counsel's assistance, upon the court's order his counsel remained on at the trial to make objections for petitioner.

whether there is an intelligent and competent waiver by the accused." Johnson, supra at 465, 58 S.Ct. at 1023. Petitioner having presented the question of his competency to waive his right to counsel to this court on habeas corpus, we must determine in the light of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966)[4] whether the trial court fulfilled its "protecting duty". See Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966); Wilson v. Bailey, 375 F.2d 663 (4th Cir. 1967). Viewing the entire record we find that there was insufficient evidence to raise a "bona fide doubt" as to petitioner's competency to require the trial judge to make inquiry. In Pate, supra, where the defendant's competency to stand trial was concerned [5] there was extensive testimony at trial from a number of witnesses that defendant's behavior was erratic and deranged. And defendant's sanity was very much in issue at trial. The Supreme Court found from the record that the evidence raised a bona fide doubt as to petitioner's competency to stand trial and that "[t]he court's failure to make such inquiry thus deprived [defendant] of his constitutional right to a fair trial." 383 U.S. at 385, 86 S.Ct. at 842.

Here as in Wilson, no motion was made to the trial judge to have a hearing on petitioner's competency and as distinguished from Pate nothing occurred at trial that would put the trial judge on notice as to petitioner's incompetency. Petitioner's competency was never put in issue and there was no evidence that he had a history of disturbed behavior or that he had ever been adjudged insane or committed to a mental institution. Counsel also apparently did not feel petitioner was of unsound mind. He dis-

cussed petitioner's having a mental examination but none was ever had. "No question of mental competence was raised on * * * his appearances in court and from his record he would be presumed to be sane." Splitt v. United States, 364 F. 2d 594, 598 (6th Cir. 1966).

■ However, the question of petitioner's "competency" to waive counsel encompasses more than the question of his sanity. An accused may be incompetent to waive counsel or stand trial because of his use of narcotics. In Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966) the question of the defendant's competency to stand trial arose because there was evidence that the defendant was on narcotics during trial. Defendant had a long history of narcotic use and addiction and the court ordered a new trial on the ground that the record demonstrated "a sufficient likelihood of incompetence to have imposed on the trial court a duty to inquire into appellant's competency." 365 F.2d at 923.

Here petitioner testified that at the time of his arrest and for some time prior to that he had been on narcotics and had been drinking heavily. He was arrested on February 8, 1963, and placed in a separate cell because of his nervous and shaky condition. The deputy city sergeant at the jail testified at trial as to petitioner's condition at the time of his arrest:

Q. Were you on duty the Ninth of February? * * *

A. Yes.

Q. At that time, what was the condition of our health?

A. Well, you seemed awfully nervous and shaky and fidgety, as if you'd

4. *Pate* has been given retrospective effect. In *Westbrook* the Supreme Court remanded the case to the Supreme Court of Arizona to re-examine in light of *Pate* the question whether the trial court had fulfilled its "protecting duty" in the trial of the defendant held three years before *Pate* was decided. And see Wilson v. Bailey, 375 F.2d 663, 668 (4th Cir. 1967).

5. Petitioner here questions only his competency to waive counsel. However, his competency to stand trial in necessarily involved because the waiver and trial both occurred on the same day. If petitioner was incompetent to waive counsel before trial, *a fortiori* he was incompetent to stand trial.

been drinking for quite awhile, and asked me would I call a Doctor for you. * * *

Q. You said we had been drinking pretty heavy? Would you say that?

A. You said so, yes. And the way you'd been acting, something certainly was wrong with you.

The medical doctor who examined petitioner the day after his arrest also testified at trial as to petitioner's condition at the time of his arrest.

Q. Was you ever called over to the City Jail to examine me for anything?

A. Yes, I was. I was called to the City Jail to examine you. * * *

Q. You gave us shots, at the time?

A. That's right.

Q. We were pretty nervous?

A. Yes. Pretty nervous.

Q. Later, after that, did you come back?

A. I came back to check you. And you were suffering some, I believe, with your stomach. * * *

Q. At that time you still told me, in the conversation between you and I, that I could not eat or sleep * * *.

A. I don't remember exactly what I told you, but I remember some of the things that probably—you were highly nervous when I first saw you. Up to that time.

Q. Alcohol or narcotics, or anything like that make you that way don't they?

A. Well, the alcohol would—I don't know anything about any narcotics.

Q. I said alcohol or narcotics would?

A. I guess so.

Q. Well, you would say, then, that we had been pretty well drinkin'?

A. Drinking, yes.

■ Viewing this and other testimony we feel the evidence was insufficient to raise a doubt as to petitioner's competency to waive counsel either because of his intoxication or alleged narcotics use. The testimony of the doctor who had twenty years of experience tends to indicate that petitioner was not on narcotics and petitioner's testimony at the state habeas hearing that he was using narcotics is otherwise uncorroborated in the record. And as to his drunken condition, approximately six weeks passed between his arrest and trial, a more than sufficient time for petitioner to regain his sobriety[6] there being no evidence of continued use before or during trial. Moreover, petitioner was released from the separate cell at least eight or nine days before trial because according to his own testimony "I had settled down some." "We think the evidence * * * did not raise a 'bona fide doubt' as to [petitioner's] competence to [waive counsel] so as to require that the judge" to make inquiry, Wilson, supra 375 F.2d at 669 and that the trial court fulfilled its "protecting duty."

Petitioner's final contention is that he was denied a fair trial because of the prejudicial and improper conduct and actions of the Commonwealth's attorney in the prosecution of the case. However, none of the grounds assigned by petitioner as depriving him of a fair trial rise to constitutional dimensions.

Therefore, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.

The clerk is directed to send certified copies of this opinion and judgment to the petitioner and to the respondent.

6. 3, Gray's Attorneys' Textbook of Medicine, ¶59A.31 and 59A.32 (1967).