THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS SZUDY, Defendant-Appellant.

First District (4th Division)   No. 76-1062

Opinion filed January 5, 1978.

James J. Doherty, Public Defender, of Chicago (Philip Farina and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Leonard J. Wojtecki, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

After a bench trial, the defendant, Dennis Szudy, was found guilty of the offense of aggravated assault (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)). He was sentenced to a term of 10 months in the House of Correction. His sole contention on appeal is that this conviction violated his constitutional right against double jeopardy inasmuch as he had previously been placed under a peace bond (Ill. Rev. Stat. 1975, ch. 38, par. 200—1 *et seq.*) for the same acts upon which the conviction is based.

While we conclude that the defendant's contention is without merit, nevertheless, for the reasons hereinafter set forth, we reverse the conviction.

## I

On April 20, 1976, a warrant issued for defendant's arrest pursuant to a misdemeanor complaint filed by his wife. The complaint charged that on April 19, 1976, without lawful justification, defendant attempted to choke her with a rolled up handkerchief, placing her in reasonable apprehension of receiving a battery.

On April 26, 1976, the parties appeared before a judge other than the one who presided at trial. The State related that the complainant wished that defendant be placed under the restraints of a peace bond. The State also requested the court to admonish defendant that if he did not leave complainant alone, the State would seek a revocation of a parole term to which defendant was apparently then subject, and effect his reincarceration. The court questioned defendant, who was not

represented by counsel at this proceeding, whether he understood the State's position. Defendant responded in the affirmative, adding that complainant was his wife and had filed an action for divorce. The court then said to defendant:

"That's neither here nor there.

What he is telling you, I think, is good information for you to know. Even this arrest now, it is now going to be stricken, can put you back in the joint.

I don't know what you are doing for time, at this juncture, it does not make any difference to me, but if you don't want to go back, don't bother lady, or anything else.

SOL, keep the peace."

The report of proceedings indicates that no plea was entered, no witnesses were sworn and no testimony was taken. The half-sheet record discloses the court's order as "Stricken from docket with leave to reinstate." There is no reference to a "peace bond" proceeding nor that the defendant in effect executed such an undertaking.

Without indicating what had transpired in the interim, the record further disclosed that on May 28, 1976, the matter came on for trial on the original misdemeanor complaint before Judge Genesen. The complainant testified that she was at her aunt's home in Chicago on April 19, 1976, when defendant took a large handkerchief from his pocket, drew it taut with his hands, and, while advancing toward her, told the witness he was going to strangle her. She said she screamed and backed away, and that defendant fled when her aunt appeared on the scene.

Defendant, who was represented at this trial by appointed counsel, claimed that he had gone to the home of complainant's aunt to ask complainant about some of his personal belongings. The complainant told him that he could have everything if he returned in two hours. He stated that he had been wearing a handkerchief around his head as a sweat band; and when his wife asked him why he was wearing this "silly looking thing," he removed it, showed it to her and told her its purpose was to keep perspiration out of his eyes. He denied pulling the handkerchief taut between his hands, and stated that he had in fact backed away from complainant as she walked. He then placed the article in his pocket and left the area. He testified that he learned a warrant had been issued for his arrest when he telephoned the aunt's home later that day.

At the close of the evidence and arguments of counsel, the court commented on certain aspects of the testimony that was presented, the lack of evidence of ill feeling between the complainant and the defendant, and the lack of motive on the part of the defendant. The following dialogue then took place:

"THE COURT: * * * I don't know about this case, but I don't

know what can be accomplished. I could find him guilty. I don't know if this case is in the divorce courts. Does the wife feel that she is going to gain anything by a criminal record against him: If she is afraid of him, he has been locked up. I imagine I could give him time served or probation or something else. Wouldn't this matter be better served by a peace bond without a criminal record. Let her talk to the State's Attorney before I make a finding.

MR. STACY: The victim indicates to me, your Honor, there was a peace bond already against the defendant and—

THE COURT: If I had known this, this would have been interesting evidence which would have also—all right, anything further from either side on this?

MR. MURPHY: No, your Honor.

THE COURT: Finding of guilty.

MR. SZURDY [sic]: Your Honor, I think this is wrong.

THE COURT: Well, I have heard the evidence and listened to it in the light of my own common sense and this is the best I could do. I feel you are guilty, I feel it is proof beyond a reasonable doubt."

The record further discloses that the defendant, his mother and the complainant made comments to the court indicating they were of the impression defendant had been placed under a peace bond prior to this trial. It is apparent that the court was misled and believed the defendant had violated the terms of his peace bond.

Defendant was thereupon found guilty of aggravated assault, but the court continued the matter with leave to the defense to reopen the case for testimony by complainant's aunt.

The case was later reopened and complainant's aunt testified as a defense witness. She had observed defendant place a handkerchief against the complainant's throat on the day in question, and she summoned the police when complainant screamed. After this witness' testimony, the matter of the peace bond was again raised by defendant's mother.

## II

Upon thorough review of the record filed on this appeal, we conclude that it is unnecessary to consider the question raised by defendant regarding the alleged violation of his constitutional right against double jeopardy. The record fails to demonstrate that defendant had in fact been subjected to a peace bond for the acts forming the basis of this conviction. Moreover, defendant has waived this question on appeal by reason of his failure to raise it below.

Section 1 et seq. of divison V of the Illinois Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 200—1 et seq.) provide for the issuance of

peace bonds. When complaint is made that a person is threatening to commit an offense against another or the latter's property, the court is authorized to hear the complainant and to issue a warrant for the arrest of the person complained of. (Ill. Rev. Stat. 1975, ch. 38, pars. 200—2 and 200—3.) The person complained of and the complainant shall be examined by the court, and if it appears that there is no reason to fear commission of the offense, the person complained of shall be discharged. (Ill. Rev. Stat. 1975, ch. 38, pars. 200—4 and 200—5.) If, on the other hand, there is reason to fear commission of an offense, the person complained of shall be required to give bond, with sufficient security in the discretion of the court, requiring him to keep the peace toward all people and especially toward the complainant or the latter's property, for a period not to exceed 12 months. (Ill. Rev. Stat. 1975, ch. 38, par. 200—6.) If the person complained of complies with the terms of the order, he shall be discharged; but if he fails to comply or to give bond as required, he may be incarcerated. (Ill. Rev. Stat. 1975, ch. 38, par. 200—7.) The statute further provides that the State's Attorney shall prosecute any breach of the conditions of the bond, and that a conviction of the person complained of for an offense against the complainant or his property shall not be a prerequisite to a proceeding upon the bond. Ill. Rev. Stat. 1975, ch. 38, pars. 200—14 and 200—15.

Apart from the statements in the record made by the principals to this matter that defendant had been placed under a peace bond in connection with the threatened strangulation occurring on April 19, 1976, the record is devoid of any documentation to that effect. While the State, at the April 26 proceeding, indicated to the court that the complainant wished a peace bond in the matter, the State itself simply requested the court to admonish defendant concerning the complainant. The court acceded to the State's request, admonished defendant in that respect, and then dismissed the complaint with leave to reinstate, telling defendant also to "keep the peace." The record does not show that any proceeding was instituted against defendant for a peace bond; nor does the record disclose that such bond was in fact issued, or if issued, what were its terms which could possibly subject defendant to future penalty for its violation.

The admonishments given by the court to defendant on April 26, 1976, including the caveat to "keep the peace" and in light of the accompanying dismissal of the charge with leave to reinstate, appear to have been no more than a warning to defendant of what might result if he did not stay away from his wife. The record before us fails to show the issuance and execution of a peace bond.

■■ We also note that defendant failed to raise the question of the alleged violation of his constitutional right against double jeopardy at the trial of the case. This failure precludes raising that issue on appeal. See

*People v. Black* (1972), 52 Ill. 2d 544, 288 N.E.2d 376, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed 2d 689, 93 S. Ct. 2155, *rehearing denied* (1973), 412 U.S. 963, 37 L. Ed. 2d 1012, 93 S. Ct. 3015; *People v. Miles* (1973), 13 Ill. App. 3d 453, 300 N.E.2d 822; *People v. Morris* (1972), 6 Ill. App. 3d 136, 139 N.E.2d 247.

### III

Nevertheless, we must reverse the conviction. The record indicates that the court had some serious misgivings as to the defendant's guilt. The court attempted to resolve the matter through some peace bond procedure so as to avoid the defendant suffering a criminal record. It was at this point that the assistant State's Attorney, who was not the same assistant in attendance at the April 26 proceeding, remarked that the complainant had told him defendant previously had been placed under a peace bond. It is clear that the State's Attorney was unaware of the inaccuracy of the complainant's statement. Thereupon, the court stated, "If I had known this, this would have been interesting evidence which would have also—all right, anything further from either side on this?" The court then pronounced its finding of guilty.

■■ It is apparent from the record that the court was of the belief that the defendant was the subject of a prior peace bond proceeding and that there was evidence to substantiate that the defendant had violated the terms of the peace bond by subsequently intruding upon his wife. This conclusion, based upon the innocent but nonetheless erroneous representations at trial, resulted directly in a finding of guilty and the imposition of a 10-month sentence. Since the conviction was based upon facts not properly in evidence, we must reverse. (See *People v. Patterson* (1976), 44 Ill. App. 3d 894, 358 N.E.2d 1164.) As pointed out, the record is devoid of any evidence to support the assertion that defendant was already under a peace bond at the time of trial. The report of proceedings makes it abundantly clear that the trial court was greatly influenced by this information.

■■ Although defendant neither raised at trial nor argued on appeal the point for reversal that we express, nevertheless we are compelled under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) to reverse and remand for a new trial because of the doctrine of "plain error." *People v. Young* (1975), 33 Ill. App. 3d 443, 337 N.E.2d 40.

Reversed and remanded.

JOHNSON, P. J., and DIERINGER, J., concur.