THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee *v.*
GARY B. VANDERWERFF, Defendant-Appellant.

First District (2nd Division)   No. 76-1367

Opinion filed January 24, 1978.

Howard Ross, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and Louis R. Schroeder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PUSATERI delivered the opinion of the court:
Defendant, Gary B. Vanderwerff, was charged by complaint with two counts of battery. Following a bench trial in the circuit court of Cook

County, the defendant was found guilty on both counts and sentenced to a term of 270 days in the Illinois Department of Corrections.

Defendant appeals, contending: (1) that he did not knowingly and intelligently waive his Sixth Amendment right to counsel; (2) that the State committed prejudicial error by referring to defendant's previous record prior to trial; (3) that the trial court's bias, impatience and hostility toward the defendant and his witness denied him a fair trial; and (4) that the trial court improperly heard the case after it became evident that the defendant was unable to competently defend himself.

These complaints arose from a collision occurring at approximately 2 a.m. on September 2, 1975. A brief summary of the facts adduced at trial reveals that the defendant's vehicle collided with an automobile occupied by the two complainants. At trial, complainant Robin Hendron testified that she and a friend were driving in the vicinity of Forsythe and 154th Place in Calumet City, when they were struck from behind while stopped at a stop sign, by the defendant's vehicle. The vehicle driven by the defendant sped away, went around the block, and returned. The defendant exited his vehicle, appeared "drugged" and "seemed to go crazy" when complainant Hendron accused the defendant of hitting her vehicle. He began "yelling" and hit the complainant in the mouth and face with his fist.

Complainant Christie Paylo corroborated Hendron's testimony. In addition to those facts she stated that the defendant choked her after she alighted from the vehicle driven by Hendron.

Officer Swanson, arrived on the scene and found the defendant fighting with another man and several other people fighting in the street. He detected a moderate odor of alcohol on the defendant's breath, later gave the defendant tests to determine whether he was driving under the influence of intoxicating liquor and discovered that the defendant staggered and that his speech was slurred. Officer Swanson concluded that in his opinion the defendant was intoxicated and unfit to drive a motor vehicle. The defendant was charged with driving under the influence of intoxicating liquor; however, he was found not guilty of this offense.

The defendant conducted his own *pro se* defense. He did not cross-examine any of the State's witnesses and testified in his own behalf at the close of the State's case. The defendant testified that he had been talking to the complainants in a bar; after they left, his vehicle was struck by Hendron's vehicle as she tried to pass him on the right. The defendant denied ever physically striking either complainant.

The only witness for the defense, Mike Mada, testified that he was a passenger in the vehicle driven by the complainant Hendron. He stated that both complainants were "kind of drunk," and that the collision

occurred when Hendron's vehicle attempted to pass the defendant's automobile but struck it instead. The State asked this witness whether he considered the defendant a good friend and inquired as to whether he would commit perjury for him.

Prior to trial the following colloquy ensued between the court and the defendant:

"THE CLERK: Gary Vanderwerff.

THE COURT: Ready for trial?

THE DEFENDANT: Yes, sir.

MR. ARTHUR: (Prosecutor) The defendant should have a lawyer. There are serious charges. For the purpose of this hearing, if you want to hear the defendant's background, I intend to ask for time.

THE COURT: Do you wish the public defender? Can you afford to hire a lawyer?

THE DEFENDANT: No, not at all.

THE COURT: Do you want the public defendant to represent you? The state says they're asking for jail time.

THE DEFENDANT: That would be insane. That would be terrible.

THE COURT: Well, then I suggest you either hire a lawyer or request the appointment of the public defender.

MR. ARTHUR: He is on four years felony probation right now, Judge. He is definitely going.

THE COURT: You have the same constitutional right not to have a lawyer as you do to have a lawyer, but that's a decision which you must make right now. So that you may be in a position to make a decision, I should advise you that the charges with which you have been charged, apart from the traffic, are class A misdemeanors. If you are found guilty on, for example, the charge of battery on Robin Hendron, the maximum punishment would be up to 364 days in a place other than a penitentiary and a fine of up to $1,000.

Now, I have offered you the public defender without charge and offered you an opportunity to employ your own attorney. Now, you must answer. Do you wish to go to trial or do you want time to get an attorney?

THE DEFENDANT: Yes, I will go right now. I am ready right now. I said it three times—I said it four times.

THE COURT: Without a lawyer?

THE DEFENDANT: I don't need a lawyer. You know it didn't happen. Anybody can get burned on a deal, right? I'd just as soon get it over with.

THE COURT: I consider that I warned you adequately about your right to be represented by a private attorney or one without charge. I've warned you about the consequences of the fine. I conclude that you understand and knowingly waive your right to counsel.

Have I asked you whether you wish trial by this court or a jury trial?

THE DEFENDANT: Yes.

THE COURT: Which do you wish?

THE DEFENDANT: Trial by the Court. (All witnesses sworn.)

MR. ARTHUR: State will make a motion to exclude witnesses. I have two civilian witnesses and an officer.

THE COURT: Are your witnesses here?

THE DEFENDANT: I have a few of them.

THE COURT: Where are they?

THE DEFENDANT: I brought just one with me today.

THE COURT: How long is the trial going to last?

THE DEFENDANT: I don't know.

THE COURT: It has to be concluded this afternoon. If you have any witnesses, you better get them in. In the mean time, you step out of the room."

After finding the defendant guilty at the close of the hearing, the court addressed the following comments to the defendant:

"THE COURT: I have some other reservations about this case that I would implement while we're having the investigation made. There is something about the manner in which you have testified here that is a little outside of my usual ability to understand and comprehend people. I would like to have an examination made on you to help me in determining what to do here. I have in mind revoking your bond and taking you into custody and have a psychiatric study made on you so when sentence time comes just how it would best be done."

The defendant contends that the trial court committed reversible error by permitting him to proceed to trial *pro se* when he did not knowingly and intelligently waive his right to counsel. This argument encompasses a determination of whether the trial court's admonishment fulfilled the mandates of Supreme Court Rule 401(a) (Ill. Rev. Stat. 1975, ch. 110A, 401(a)). This rule requires that:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

■■ In interpreting this rule, our Illinois courts have consistently followed certain precepts and enunciated certain principles to the effect that:

"The purpose of Supreme Court Rule 401(a) is to provide a procedure which will eliminate *any doubt* that a defendant understands the nature and consequences of the charge against him before a trial court accepts his waiver of the right to counsel; it is a procedure that precludes a defendant from waiving assistance of counsel without full knowledge and understanding." (Emphasis added.) (*People v. Lindsey* (1st Dist. 1974), 17 Ill. App. 3d 137, 140, 308 N.E.2d 111.)

A finding that the right to counsel has been waived is not to be made lightly. (*People v. Melvin* (5th Dist. 1975), 28 Ill. App. 3d 1090, 1093, 329 N.E.2d 890; *People v. McMurray* (1st Dist. 1977), 55 Ill. App. 3d 581, 371 N.E.2d 46.) In assessing the validity of a waiver, a reviewing court must determine whether there was an intelligent relinquishment or abandonment of a known right or privilege. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) More than a routine inquiry is required to make this determination. (*People v. Bush* (1965), 32 Ill. 2d 484, 207 N.E.2d 446.) Such a finding should be preceded by a careful inquiry by the court, aimed at determining the defendant's ability to conduct his own defense. (*People v. Morris* (1969), 43 Ill. 2d 124, 251 N.E.2d 202.) Moreover, the waiver of any constitutional right requires the highest level of competency. (*Sieling v. Eyman* (9th Cir. 1973), 478 F.2d 211, *People v. Heral* (1976), 62 Ill. 2d 329, 336.) In this context one court has stated that "[a]ny waiver of counsel is carefully scrutinized '[b]ecause of the importance of the right to counsel in preserving the free exercise of other constitutional rights in the criminal process.' [Citation.]" 62 Ill. 2d 329, 336.

■■ Thus, in addition to engaging in a colloquy with the defendant to advise him of his right to counsel, the court must still determine for itself whether the accused has the requisite capacity to effectuate an intelligent waiver of his right. The objective criteria commonly utilized by courts to make this determination are the defendant's age (*LaPlante v. Wolff* (8th Cir. 1974), 505 F. 2d 780), level of education (*United States v. Harrison* (2d Cir. 1971), 451 F. 2d 1013), mental capacity (*Etier v. Peyton* (W.D.

Va. 1968), 282 F. Supp. 896) and prior involvement, if any, in legal proceedings (*United States v. Trapnell* (9th Cir. 1975), 512 F.2d 10). On the basis of the surrounding circumstances and these relevant factors, the trial court must make a subjective evaluation of whether an accused was aware of what he was doing. See Comment, *Faretta v. California and the Pro Se Defense: the Constitutional Right of Self-Representation,* 25 Am. U.L. Rev. 897, 908 (1976).

■■ In making our determination of whether there was a valid waiver in the case at bar, we must consider the words and conduct of the defendant, and indulge in every reasonable presumption against waiver. (*People v. Hessenauer* (1970), 45 Ill. 2d 63, 68, 256 N.E.2d 791; *People v. Pruitt* (2nd Dist. 1971), 2 Ill. App. 3d 434, 436, 276 N.E.2d 19.) After carefully scrutinizing the record, we conclude that the defendant did not effectively waive his right to counsel. Although the trial judge advised the defendant of his right to counsel, and right to appointed counsel if he was indigent, his admonishment as to the maximum penalty was unclear. At one point, the trial judge stated that the maximum penalty for the offense was up to 364 days in a place other than the penitentiary and up to a $1,000 fine. Shortly thereafter, the judge stated to the defendant, "I've warned you about the consequences of the fine," which could have misled this *pro se* defendant into believing that a fine was the maximum penalty that could be imposed. Instead of carefully admonishing the defendant of his rights and the ramifications of a waiver as was mandated in this instance, the court conducted no more than a routine inquiry of the defendant in addition to giving a confusing statement of the penalty. The trial judge's advice as to the maximum penalty prescribed for the offense was limited to that "the maximum punishment would be *up to* 364 days in a place other than a penitentiary and a fine *up to* $1,000." (Emphasis added.) The judge did not explain the nature of the offense to the defendant, inquire as to whether he understood the charge, or ask any questions which would enable him to determine whether the defendant could in fact, afford counsel.

Moreover, the trial court's sole motivation appeared to be to expedite the proceeding. The trial judge after informing the defendant that he had a right to a public defender or his own private attorney stated "now you must answer, [d]o you wish to go to trial or do you want time to get an attorney?" Similarly, the trial judge asked, "How long is the trial going to last?" The defendant replied "I don't know," and the trial judge stated "It has to be concluded this afternoon." The trial judge also asked whether all of the defendant's witnesses were present. Despite the defendant's response that "I have a few of them, * * * I brought just one with me today," the judge still insisted on proceeding to trial immediately, and told the defendant "If you have any witnesses you better get them in." The trial judge offered no further assistance or explanations to this

unrepresented defendant concerning what methods of process were available to secure these witnesses' attendance and did not afford the defendant a continuance to aid him in their procurement.

While it is not imperative that the trial court advise the defendant of the "dangers and disadvantages of self-representation" (*People v. McMurray*) or what the requirements of indigency might be (*People v. Anthony* (1st Dist. 1976), 42 Ill. App. 3d 102, 105, 355 N.E.2d 680), the trial court does have an obligation to ascertain whether the defendant knowingly and intelligently waived his right and did not make an impetuous decision. In the case at bar, the trial court did not ask the defendant if he sought a continuance so that he could acquire counsel. Instead, the court told the defendant "you have the same constitutional right not to have a lawyer as you do to have a lawyer, but that's a decision which you must make *right now.*" (Emphasis added.) As the court recently stated in *People v. Voight* (3d Dist. 1977), 52 Ill. App. 3d 832, 836, 368 N.E.2d 165, "* * * [w]hile we quite agree with the goal and aim of the trial judge to promote the efficiency of the trial system, nevertheless the right of legal representation is such an important legal right that some flexibility is required.* * *"

In *Powell v. Alabama* (1932), 287 U.S. 45, 69, 77 L. Ed. 158, 53 S. Ct. 55, our supreme court emphasized the need for professional legal representation when it stated:

> "Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence * * * He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." (287 U.S. 45, 69, 77 L. Ed. 158, 170, 53 S. Ct. 55.)

It is for this reason that a waiver of a defendant's right to counsel must be carefully scrutinized. The trial court's comment to the defendant "that there is something about the manner in which you testified here that is a little outside of my usual ability to understand and comprehend people," and subsequently ordering him to submit to a psychiatric examination, make us skeptical of the defendant's capacity to effectuate a knowing and intelligent waiver of counsel.

■■ ■ Moreover, the record fails to establish that the defendant understandingly waived his constitutional right to a jury trial as required

by section 103—6 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1975, ch. 38, par. 103—6.) While this issue was not raised in the court below, Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) compels us to notice defects affecting substantial rights under the doctrine of "plain error." Nor does the fact that this error was not urged on appeal preclude our consideration of it. As the court in *People v. McKinstray* (1964), 30 Ill. 2d 611, 616, 198 N.E.2d 829, 832, explicated:

> " 'We recognize that counsel for defendant did not present or argue this point; and that the general rule is that where a question is not raised or reserved in the trial court, or where, though raised in the lower court, it is not urged or argued on appeal, it will not be considered and will be deemed to have been waived. However, this is a rule of administration and not of jurisdiction or power, and it will not operate to deprive an accused of his constitutional rights of due process. "The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial. Although no exceptions were preserved or the question is imperfectly presented." [Citations.]' " (30 Ill. 2d 611, 616, 198 N.E.2d 829, 832.)

And see generally *People v. Hubert* (1st Dist. 1977), 51 Ill. App. 3d 394, 399, 366 N.E.2d 909; *People v. Foster* (1st Dist. 1977), 56 Ill. App. 3d 22, 371 N.E.2d 961; *People v. Young* (3d Dist. 1975), 33 Ill. App. 3d 443, 337 N.E.2d 40; *People v. Szudy* (1st Dist. 1977), 56 Ill. App. 3d 494, 371 N.E.2d 1222.

■■ In the case at bar, the trial judge merely inquired of the defendant whether he had previously been asked whether he wanted trial by court or trial by jury. The defendant responded that the court had so inquired previously, and that he wanted "trial by court." However, the record before us is devoid of any prior colloquy occurring between the trial judge and the defendant regarding this matter. While we are aware that there is no specific or defined formula to follow in determining whether a jury waiver is understandingly made (*People v. Crable* (1st Dist. 1967), 80 Ill. App. 2d 243, 246, 225 N.E.2d 76), the absence of any prior admonishment coupled with the fact that the defendant was not represented by counsel requires us to adhere strictly to the rule that:

> "Where the record is silent, as it is in this case, of anything from which it can be inferred defendant expressly and understandingly waived his right to trial by jury, we believe such deficiency is not merely error, * * * and can not be regarded as merely harmless error having no substantial effect on the defendant's rights or the propriety of his conviction." (*People v. Losacano* (3d Dist. 1975), 29 Ill. App. 3d 103, 109, 329 N.E.2d 835.)

Under the circumstances presented, actual prejudice need not be demonstrated since, "we are unable to do more than speculate as to the outcome of this cause in the event that it were to be tried before a jury." *People v. Miller* (1st Dist. 1977), 55 Ill. App. 3d 1047, 1050, 371 N.E.2d 917.

The defendant also contends that the State committed prejudicial error by informing the court of his previous felony conviction prior to trial. The State argues that it had an obligation to so inform the court, so that the court could effectively advise the defendant of the maximum penalty for the offense. However, the State went beyond merely being informative by unnecessarily adding, after stating that it was requesting jail time, that "He is on four years felony probation right now, Judge, [h]e is definitely going." While we are aware of the rule that at a bench trial, the judge is presumed to consider only competent evidence (*People v. Glanton* (1st Dist. 1975), 33 Ill. App. 3d 124, 338 N.E.2d 30), we are also cognizant of the countervailing principle of cumulative error. As this court previously stated:

> " * * * While the object of review is not to determine whether the record is completely free of error; nevertheless, a case may be reviewed to ascertain whether upon the trial there was such error or accumulations of error as might prejudice the rights of a party. [Citation.]* * *" (*Oudshoorn v. Warsaw Trucking Co.* (1st Dist. 1976), 38 Ill. App. 3d 920, 927, 349 N.E.2d 648.)

Similarly, we find the language articulated by the court in *Bulleri v. Chicago Transit Authority* (1st Dist. 1963), 41 Ill. App. 2d 95, 106, 190 N.E.2d 476, to be most appropriate wherein it stated:

> "Without minimizing the importance of any single instance of improper argument which we have referred to in this case, we should like to point out that the cumulative effect of these arguments in combination was grossly prejudicial and, in our opinion, requires a new trial." 41 Ill. App. 2d 95, 106.

In view of the aforementioned, we conclude that it will not be necessary to discuss and treat with the remaining contentions of the defendant. *People v. Lang* (1st Dist. 1975), 26 Ill. App. 3d 648, 655, 325 N.E.2d 305, 310; *People v. Hubert* (1st Dist. 1977), 51 Ill. App. 3d 394, 366 N.E.2d 909.

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.


Reversed and remanded.


STAMOS, P. J., and DOWNING, J., concur.