THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MURIEL DOUGLAS BLACK, Defendant-Appellant.

Fifth District    No. 78-10

Opinion filed February 5, 1979.

Michael J. Rosborough and John H. Reid, both of State Appellate Defender's Office, of Mt. Vernon, and E. Joyce Randolph, research assistant, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Robert C. Perry and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

After a jury trial in the Circuit Court of Jackson County, defendant

Muriel D. Black was found guilty of armed robbery and sentenced to a term of 30 to 100 years imprisonment. On appeal, defendant challenges his conviction and sentence, contending that he did not knowingly and intelligently waive his right to counsel; that the trial court abused its discretion in failing to order *sua sponte* a mental examination of defendant to determine his fitness to stand trial; that his motion for a continuance of the sentencing hearing was improperly denied; and that he did not receive a fair sentencing hearing when the trial court refused counsel's request for a psychological examination and time to gather defendant's hospital records from another State.

On May 9, 1977, the date defendant was charged by information with the commission of the alleged offense, defendant was advised that armed robbery was a felony punishable by imprisonment; that he had a right to an attorney; and that if he were indigent, the court would appoint counsel. Upon defendant's request for an attorney, a public defender was assigned. At defendant's arraignment on May 24, defendant was further advised that armed robbery was a Class 1 felony.

Approximately two weeks later, defendant moved for the removal of the public defender and appointment of other counsel, alleging that the public defender failed to keep a scheduled interview. The motion was found to be without merit and denied.

On June 29, the public defender filed a motion for a medical examination of defendant, stating that defendant was engaged in a "hunger strike" and had refused to speak with counsel. After the trial court granted the motion, Dr. Donald W. Porter was appointed to examine defendant. Dr. Porter reported that the patient was alert, well oriented and needed no hospitalization. Throughout the examination, defendant refused to speak and otherwise remained uncooperative.

On July 12, defendant filed two motions which, in essence, requested the dismissal of the public defender and permission to appear as his own counsel. At the hearing on these motions, the court asked defendant if he were capable of representing himself. Defendant replied, "I stand on the face of the motions, yes." The court then admonished defendant that granting the motion would absolve the public defender's office of any liability for the consequences of self-representation and subject defendant to the same requirements as if he were a member of the bar. In order to determine whether defendant was capable of representing himself or needed some legal assistance to prepare a defense, the trial court asked him to reveal the extent of his education. Defendant refused to answer but indicated his willingness to be assigned co-counsel. The court granted defendant's motion and stated:

"The Public Defender is hereby relieved of his responsibilities and liabilities with regard to the defense of this case. However, the

Court is appointing the Public Defender's Office to sit at the counsel table, without any responsibility or any liability, but merely for the purpose of advising Mr. Black when such advice is requested by Mr. Black during the proceedings herein."

On October 12, the date of the trial, the court permitted defendant, immediately prior to the voir dire examination, to make a lengthy statement in the presence of the jurors. In his statement, defendant alleged, among other things, that the pretrial conference, which was held on October 6 denied his constitutional right to a fair hearing in open court; that the Jackson County jail staff in conjunction with the court and the sheriff's office conspired to bring about his death; that he was denied access to law books; and that he refused to be a "participant to this crude parody of American justice." Defendant later repeated this tirade in lieu of an opening statement.

The testimony at trial revealed that James H. Johnson, a bus ticket agent, was forced at gun point to hand over $125 in $5 and $1 bills to a middle-aged black male just as the bus station was being closed for the evening. Shortly after the assailant fled, the police apprehended defendant as a suspect and brought him to the station for identification. At the time of his apprehension, defendant had a loaded gun; a bus ticket to Mt. Pulaski which the ticket agent had apparently sold to him immediately prior to the incident; and a number of $5 and $1 bills, which defendant later admitted belonged to the bus station. Both James H. Johnson and the bus express handler, Harvey Lee Condor, identified defendant as the person who had committed the robbery.

Defendant was offered, but declined, the opportunity to cross-examine the State's witnesses, and, in addition, chose not to present witnesses or testify in his own behalf. Likewise, at the instruction conference, defendant indicated that he did not want to participate and stood silently while the State tendered its instructions.

Thereafter, the jury found defendant guilty of armed robbery.

On November 4, Dennis Waks, the public defender who had assisted defendant at trial, was formally appointed as counsel. Six days later, he filed a motion for a continuance of the sentencing hearing which was scheduled for November 14. At this hearing, defense counsel argued that on the date of his appointment he first became aware that defendant might have psychological problems. He therefore asked for a continuance until he received defendant's psychiatric records from a State hospital in Wisconsin and defendant was examined by a psychologist. The trial court in denying the motion stated that it had numerous occasions to observe defendant throughout these proceedings and found no indication of defendant's incompetency. It also noted that although defendant had spent some time in a mental institution, this fact, standing alone, was

insufficient, to raise a bona fide doubt of defendant's capacity or fitness.

After the presentence report revealed that defendant had spent most of his adult life in prison for numerous armed robbery convictions, the trial court sentenced defendant to a term of 30 to 100 years imprisonment.

Defendant first argues that he did not knowingly and intelligently waive his right to counsel when the trial court failed to admonish him of the possible penalties upon conviction pursuant to Supreme Court Rule 401(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 401(a).) This rule provides:

> "Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

■■ Recent Illinois decisions indicate that a trial court's failure to inform a defendant expressly of the minimum and maximum sentence should not result in a reversal of a conviction where the record clearly reveals, as in this case, that defendant knowingly and intelligently waived his right to counsel. (See *People v. Jackson*, 59 Ill. App. 3d 1004, 376 N.E.2d 685 (1st Dist. 1978); *People v. Smith*, 33 Ill. App. 3d 725, 338 N.E.2d 207 (3d Dist. 1975).) Defendant was not only advised of the nature of the offense and that he had a right to court appointed counsel, but was informed that armed robbery was a Class 1 felony punishable by imprisonment. Considering defendant's prior experiences with armed robbery convictions and his familiarity with criminal law, there is no question that defendant knew that he could receive a lengthy prison sentence upon conviction. Nevertheless, defendant, well aware of the potential punishment, remained adamant in demanding to represent himself after repeatedly requesting the dismissal of the court appointed counsel. Even after the court granted defendant's request, it felt obliged to assign a public defender to assist defendant in preparing a defense. In light of the trial court's repeated attempts to insure that defendant received a fair trial and defendant's knowledge and understanding of these proceedings, we hold that the court substantially complied with the requirements of Rule 401.

We note, furthermore, that the Rule 401(a) admonitions may not be required in situations where a defendant continues to receive the

assistance of a public defender. (See *People v. Lindsey*, 17 Ill. App. 3d 137, 308 N.E.2d 111 (1st Dist. 1974).) In *Lindsey*, the court found that when a defendant is permitted to conduct his own defense, with court appointed counsel to assist him, there is no waiver of counsel within the meaning of Rule 401(a). Accordingly, the trial court in *Lindsey* was not required to admonish defendant of the Rule's provisions. While the present case is similar to *Lindsey*, we are not compelled to decide whether these admonitions need not be given, having already established a case of substantial compliance with the Rule.

Defendant next argues that he did not knowingly and intelligently waive his right to counsel, alleging that the trial court did not conduct an adequate inquiry into the circumstances of his decision to proceed *pro se*. Specifically, defendant argues that the court failed to advise him of the inherent difficulties of self-representation (see *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975)) and, in addition, did not sufficiently investigate his ability to defend himself.

We note that the trial court did warn defendant that the public defender would no longer be liable for the consequences of defendant's self-representation and that defendant would be subject to the same rules and regulations as if he were a member of the bar. In addition, the trial court made repeated efforts to determine whether defendant was capable of representing himself but was continually rebuked by defendant's failure to cooperate with the proceedings.

In any event, the Illinois cases involving a waiver of counsel have never required a defendant to be advised specifically of the dangers and disadvantages of self-representation in addition to the admonitions of Rule 401(a) (see *People v. Vanderwerff*, 57 Ill. App. 3d 44, 372 N.E.2d 1014 (1st Dist. 1978); *People v. Anthony*, 42 Ill. App. 3d 102, 355 N.E.2d 680 (1st Dist. 1976)); nor have these cases set forth specific procedures to be utilized by a trial court in determining a defendant's ability to represent himself. The critical issue in all of these decisions and the issue which we have addressed is whether a defendant has knowingly and intelligently waived his right to counsel.

Defendant next argues that the trial court abused its discretion in failing to order *sua sponte* a fitness hearing of defendant to determine his fitness to stand trial. An accused is not entitled to such a hearing unless the trial court has notice of facts which raise a bona fide doubt of defendant's fitness or competency. (See *People v. Logan*, 50 Ill. App. 3d 460, 365 N.E.2d 304 (5th Dist. 1977).) A careful reading of the record reveals no evidence that defendant was unable to understand the nature and purpose of the proceedings against him nor unable to prepare a defense. (See Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(a).) Apparently defendant's alleged "irregular conduct" before and at trial was no more

than an attempt to disrupt these proceedings. Accordingly, the trial court did not err in failing to order a fitness hearing on its own motion.

■ Defendant last argues that the trial court abused its discretion in denying the recently appointed defense counsel's motion for a continuance of sentencing and consequently denied defendant a fair sentencing hearing when it refused counsel's request for a psychological examination and time to receive defendant's hospital records from Wisconsin. We find no abuse of discretion nor a denial of a fair hearing where there is no evidence that would justify a fitness determination. Furthermore, defense counsel's contentions that he was unfamiliar with the facts of the case and had recently become aware of defendant's possible psychological problems are without merit when one considers that he had assisted defendant in his defense for more than five months. In addition, the trial court had observed defendant throughout these proceedings and found no indication that defendant was unfit to be sentenced.

We note that defendant failed to include many of the points of error raised in this appeal in his motion for a new trial. While this ordinarily constitutes a waiver of these contentions, we nevertheless felt compelled to search the record for any possible plain error. Having found no plain error nor any merit to those arguments properly preserved for review, we affirm the judgment of the Circuit Court of Jackson County.

Affirmed.

JONES and KUNCE, JJ., concur.